35 C.C.P.A. (Patents)

### Application of WALDIE.
### Patent Appeal No. 5339.

Court of Customs and Patent Appeals.

Nov. 17, 1947.

Toulmin & Toulmin, of Dayton, Ohio (H. A. Toulmin, Jr. and H. H. Brown, both of Dayton, Ohio, and John M. Mason, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Judge.

The Primary Examiner of the United States Patent Office rejected all the claims of appellant's application for a patent on a wrinkling varnish and method of making the same, and, upon appeal to the Board of Appeals, the examiner's action was affirmed. From the board's decision appellant has here appealed.

Appellant appealed as to all the rejected claims but here moved to dismiss his appeal as to seven of the rejected claims, leaving for our consideration claims 4, 5, 6, 10, 14, 15 and 16. Appellant's motion to dismiss will be granted.

The alleged invention deals with making a wrinkling varnish in which dehydrated castor oil is used in place of the more expensive types of wrinkling oils such as China wood oil or oiticica oil. According to appellant's teaching in his application, the dehydrated castor oil is obtained by heating raw castor oil in the presence of a dehydrating catalyst at a temperature of 600 to 650° F. The oil is then allowed to cool to a temperature of substantially 350 to 400° F., is blown with air at this temperature, and is thereafter admixed with a soluble drier, a hydrocarbon solvent, and a hardening agent. The method is said to produce a coating composition adapted to form a uniform wrinkle surface when baked at a temperature of 200 to 250° F. for approximately one hour.

Claims 4 and 14 appear to be representative of the appealed subject matter and follow:

"4. A wrinkling varnish comprising blown dehydrated castor oil, oil soluble drier, hydrocarbon solvent, and a hardening agent comprising a short oil varnish.

"14. The method of making wrinkling varnish which comprises heating raw castor oil at from 600 to 650° F. in the presence of a dehydrating catalyst, cooling the dehydrated castor oil to substantially 350 to 400° F., blowing with air, and thereafter admixing with oil soluble drier and hydrocarbon solvent to produce a coating composition adapted to produce a wrinkle surface when baked at 200 to 250° F. for approximately one hour."

The references relied upon are:

Root    1,689,892    October 30, 1928

"A Study of Bodying Dehydrated Castor Oil With Other Oils," C.D.I.C. Club, Scien-

tific Section of National Paint, Varnish and Lacquer Association, 1939, pages 51 to 60, inclusive.

The examiner rejected the appealed claims as unpatentable ever the C.D.I.C. paper in view of the Root patent and also rejected claim 14 as being drawn to an aggregation.

The patent to Root discloses a varnish of the type here involved in which China wood oil is used instead of the dehydrated castor oil used in appellant's process.

The C.D.I.C. Club publication shows that it is old to substitute "Isoline," which is a dehydrated castor oil, for China wood oil in the making of a wrinkle varnish.

The chief question presented here involves primarily a question of law. It will be noticed that in claim 4, as in other appealed claims, the varnish is described as comprising "dehydrated castor oil," while in claim 14 the particular method of preparing the raw castor oil by heating to certain temperatures, blowing with air, etc., is recited. Appellant argues that the references do not disclose the character of dehydrated castor oil which he mentions in his specification and relies upon his specification to define the term "dehydrated castor oil." His specification points out that the dehydrated castor oil is treated in a certain manner, as heretofore stated, but the appellant still calls his material "dehydrated castor oil" and it, obviously, properly responds to that term.

The board held that "dehydrated castor oil" should be given its usual and ordinary meaning and that, when this term is so construed, the claims read upon the prior art as applied by the examiner.

The Solicitor for the Patent Office points out that under such circumstances it is the settled rule in the Patent Office, when considering the allowability of claims, to give controverted terms the broadest meaning of which they are susceptible, and that appellant cannot distinguish from the prior art, after having used the term "dehydrated castor oil," by stating that his treatment of the castor oil makes a different kind of oil from that called for in the claims. The solicitor further points out that if the novelty and invention are claimed to rest in the manner of dehydrating the castor oil the claims should at least cover this phase of the process.

We think the Patent Office view of this legal question is proper. As the issue is presented, it makes no difference how appellant treated his castor oil in dehydrating it if it was dehydrated castor oil which he used in the process.

The solicitor argues (as before stated) that if appellant had a particular kind of dehydrated castor oil he should have stated it in his claims. Appellant contends he did so in claim 14 and that the Patent Office rejected said claim on the theory that it covered "an aggregation of unrelated processes." Just why the steps of the process in claim 14 are not related is not made clear to us, but nevertheless the claim was rejected upon the prior art and we think properly so.

It is nowhere shown that the particular temperatures used in the several steps of the process were critical, and since we are of the opinion that the tribunals below properly combined the references in rejecting appellant's claims upon the cited prior art it follows that the temperature limitations do not lend patentability to them.

Moreover, it is nowhere shown in the instant record that appellant's dehydrated castor oil is in any respect different from any other. This fact was pointed out by the examiner.

It is clear to us that, in view of the prior art suggestions, dehydrated castor oil could be used instead of China wood oil (which latter is synonymous with "tung oil"), and and that appellant's claims do not distinguish patentably over the prior art. The decision of the Board of Appeals affirming the examiner's rejection of claims 4, 5, 6, 10, 14, 15 and 16 is affirmed. The appeal as to claims 1, 2, 7, 8, 11, 12 and 13 is dismissed.

Affirmed.

HATFIELD, Judge, took no part in the consideration or decision of this case.